Filed 7/8/26  Marriage of Vasquez CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Amador)

|  |  |
|---|---|
| In re the Marriage of MARCIE MARIE and GARY JOSEPH VASQUEZ. | C103836 |
| MARCIE MARIE VASQUEZ,<br>        Respondent,<br><br>        v.<br><br>GARY JOSEPH VASQUEZ,<br>        Appellant. | (Super. Ct. No. 18FCD06944) |

SUMMARY OF THE APPEAL

Approximately six years after Marcie Marie Vasquez filed a petition to dissolve her marriage to Gary Joseph Vasquez, the parties reached an agreement at a settlement conference to divide their assets.  As is customary in family law cases, we use the parties' first names for clarity.  (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 832, fn. 1.)  At a hearing, the trial court heard the terms of the full settlement agreement and the parties stated they agreed on the terms.

Two months later Gary's attorney sent a draft written agreement to memorialize the settlement to Marcie's attorney.  Gary was dissatisfied with the settlement agreement and retained new counsel to review it.

1

When Gary's new counsel asked if Marcie would stipulate to unwinding the settlement, Marcie filed a motion to have the settlement agreement enforced under Code of Civil Procedure section 664.6. Gary then filed a motion to have the settlement agreement set aside. Gary claimed he had not understood the terms of the settlement, that he had not been privy to all the information relied upon in reaching it, and that lack of sufficient disclosures by the parties tainted the assumptions underlying the agreement.

At a hearing on the motions, the trial court granted Marcie's motion and denied Gary's. The trial court entered a judgment, to which it attached a copy of the settlement agreement that Gary's first attorney had prepared with minor changes requested by Marcie's counsel.

Gary appeals the trial court's rulings on the motions. On this record, which does not include a record of the oral proceedings, we affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Pre-Settlement Proceedings

In September 2018, Marcie filed a petition in propria persona to dissolve her marriage to Gary. Gary, represented by counsel Robert Moore, filed a response that October. Both parties stated they had been married in August 2000 and had separated exactly 18 years later. The parties identified one child of the marriage, who was born in 2003. Marcie claimed she was not aware of any community or quasi-community assets or debts to be divided by the court. Gary said the community and quasi-community assets and debts were unknown and he would amend his response when they were ascertained.

In March 2019, still acting in propria persona, Marcie filed an amended petition. In the amended petition, Marcie indicated there were community and quasi-community assets and debts as identified on an attached property declaration. On the attachment, Marcie listed some jewelry; a Ford F 250 pickup and a Toyota Tacoma, both acquired in

2

2015; a Wells Fargo checking account acquired in 2008; Federal Union and Golden 1 accounts; and retirement accounts with unions. The only valuation she provided on the form was a debt of $1,000 on the Wells Fargo account.

The day after Marcie filed her amended petition, Gary, this time represented by David Foyil of the Equal Justice Law Group, filed a notice of automatic stay in the dissolution proceedings because Gary had filed a Chapter 13 bankruptcy action. In May 2021, Gary, still represented by Foyil, filed a notice of termination of the stay.

In December 2021, James A. McGrath, who then represented Marcie, filed a declaration in the trial court stating he had served Gary with preliminary disclosures regarding community and separate assets and debts under Family Code section 2104 (a preliminary disclosure declaration) in early 2019. In May 2022, Foyil filed a preliminary disclosure declaration stating he served preliminary disclosures on Marcie's counsel that month.

In August 2023, Jacqueline M. Eston, who then represented Marcie, filed a declaration in the trial court stating she had served Marcie's final declaration of disclosure of assets and debts under Family Code section 2105 (a final disclosure declaration) on Gary's counsel that month.

According to trial court minutes, on November 6, 2023, the trial court held a case management conference. At the conference, the court ordered a compliance date be set requiring subpoenas issued to Golden 1 Credit Union, OE Federal Credit Union, and any bank account in Gary's name be completed by January 26, 2024. The trial court also ordered Gary to pay some of Marcie's attorney fees. The trial court set the case for a mandatory settlement conference in April 2024.

In findings and an order issued after the April 2024 settlement conference hearing, the trial court ordered Gary to obtain tax reports from the period of 2012 to the date of production. The trial court also ordered Gary to obtain and produce all bank statements from all banking/depository accounts that existed at or near the parties' date of separation

3

including Golden 1 Credit Union, OE Federal Credit Union, and Wells Fargo (including a joint account). The trial court also ordered Gary to provide any information he obtained to Marcie's counsel once he obtained subpoenaed bank documents and statements. Further, the trial court ordered Gary to cooperate with his attorney to obtain detailed information on his retirement accounts and to provide information on those accounts to Marcie's counsel. The trial court set an April 30, 2024, deadline for Gary to provide the tax, bank, and retirement records. In addition, the trial court awarded $5,000, in Family Code section 271 fees from Gary to Marcie's counsel. Under Family Code section 271, "the court may base an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." The trial court continued the settlement conference to June 2024.

In a findings and order issued after the June 2024 settlement conference hearing, the trial court ordered Gary's attorney to obtain letters from Gary's union regarding retirement accounts from the date of marriage to the current date. The trial court also ordered "[j]oint Wells Fargo Bank account statements at date of separation shall be provided to Ms. Eston, to determine the community property interest in this account."

<u>August 2024 Settlement Conference, Related Motions, and Judgment</u>

According to the minutes of the August 7, 2024, settlement hearing, the trial court, "heard the terms of the full settlement agreement." The trial court then "inquire[d] of the parties. All parties [were] in agreement." The trial court then approved the full settlement agreement. The clerk was provided "the handwritten settlement agreement and provide[d] a copy to Mr. Foyil and the Court," before returning the original to Ms. Eston.

4

The handwritten document referred to in the court minutes of August 7, 2024, is somewhat difficult to interpret, but it appears to state that property would be awarded to the parties according to a "Propertizer." It shows that Gary is to make an equalizing payment to Marcie totaling $50,000, it sets a schedule for Gary to pay some of Eston's fees, it includes a provision for the payment of spousal support continuing beyond November 1, 2024, and it contemplates an October 2025 hearing to review all spousal support issues. In his opening brief, Gary identifies this document as the notes that were submitted, and Marcie identified this document as the handwritten document in the declaration she filed in support of her Code of Civil Procedure section 664.6 motion.

The Propertizer lists, characterizes, and values various property items that may have impacted the value of the community estate. It appears that if all the assumptions included in one draft of the Propertizer had been adopted by the parties, Gary would have had $225,290 of community property assets allocated to him in the dissolution, and Marcie would have received assets worth $2, entitling her to an equalization payment of $112,643. It is unclear how various handwritten annotations made on that draft impacted those totals, and there is no annotation next to the $112,643 indicating the parties had agreed to the $50,000 equalizing payment instead.

According to hearing minutes, at the August 7, 2024 hearing, the trial court also set an October 2025 hearing date to review the status of permanent spousal support and arrears.

On January 22, 2025, John B. Allen replaced Foyil as counsel for Gary.

On February 5, 2025, Marcie filed a request for order entering judgment under Code of Civil Procedure section 664.6 based on the settlement agreement reached at the August 7, 2024, hearing (the 664.6 motion).

Based on the records submitted with the 664.6 motion, in October 2024, a paralegal working with Foyil sent Eston proposed "final documents" to memorialize the settlement agreement and obtain a judgment that would dissolve the marriage and

5

incorporate the settlement. However, approximately one week later, the paralegal sent Eston another email asking Eston to "[p]ut a hold on signing the" settlement agreement, because Foyil and Gary were "still discussing." Then, on January 21, 2025, Allen sent Eston a letter seeking a stipulation to undo the settlement.

Marcie asked the trial court to enter a judgment using the written settlement agreement drafted by Foyil with a few proposed handwritten changes, which she characterized as "minimal." Marcie also sought further sanctions in the form of attorney fees under Family Code section 271.

On February 6, 2025, Gary filed a request for an order to "Set Aside Settlement," seeking a vocational exam of Marcie, and for a trial (the set-aside motion). Gary took the position that the $50,000 equalization payment in the settlement agreement was "excessive and unfair" and should be set aside due to "mutual mistake due to lack of information to make informed decisions." In his supporting declaration, Gary said he was confused when he saw the draft agreement, because he had believed if he made the $50,000 payment contemplated in the settlement agreement, his support obligations "would go away." He said Foyil only met with him a few times, and those meetings occurred while he was at the courthouse waiting for hearings. He said he was "not privy to the paperwork" the parties considered in reaching the agreement until he replaced Foyil with Allen as his counsel. Allen also filed a declaration. Gary and Allen both stressed that Gary works as a heavy equipment operator and, as a result, is not good with understanding paperwork.

In his declaration, Gary identified payments he had made using separate property to cover tax preparation, pay back taxes, expunge bankruptcy debts, and pay for the couple's child's dental care (post-separation payments). In his declaration, Allen characterized these post-separation payments as community expenses for which Marcie owed Gary.

6

In his declaration to support the set-aside motion, Allen wrote that he had begun reviewing the files and admitted, "[i]t looked like [Gary] was the kind of person who does not do what they are supposed to do. I would not be able to help with that." Allen claimed he decided it was still worth taking a closer look at the case, because he did not understand how Gary could be asked to pay a $50,000 equalization payment in a case that he understood to be "virtually a no asset case." Allen admitted that at the time he filed the set-aside motion, he had not yet had the "opportunity to go through all the files." He had, however, been able to review the disclosures the parties had exchanged and found them "lacking" with "nothing supporting a $50,000 equalization, unless the facts were mistaken or there is information I have not yet seen."

On February 27, 2025, Gary filed (1) an opposition to the 664.6 motion; and (2) Allen's supplemental declaration in support of the set-aside motion.

The opposition includes a legal argument that sheds light on Gary's theory as to why the proposed settlement agreement should be set aside. Gary argued the settlement agreement could be rescinded under Civil Code sections 1565 and 1566 due to a lack of consent to its terms. He also argued the agreement should be set aside because the parties failed to meet their fiduciary duties by failing to provide sufficient information in their property disclosures to each other, which would allow Gary to bring a motion to set aside a judgment under Family Code section 2122. Gary argued this lack of information at the settlement stage led to Gary being obligated to make a $50,000 equalization payment that "cannot be anywhere near correct, making it grossly unfair, due to Gary (actually both parties as shown by the Propertizer) not having full information at the settlement."

The opposition document also claims the Propertizer did not account for Gary's post-separation payments.

Allen attached various disclosure documents to his supplemental declaration in an effort to demonstrate what he argued were insufficient disclosures on Marcie's part, including the final disclosure forms Marcie served in August 2023 and a schedule of

7

assets Allen believed Gary included with his initial disclosures that was "not signed." Allen observed that Marcie's disclosures did not include values for most of the property listed, including property she identified as her separate property. He also stated Marcie did not provide documentation to support her claim that some of the property obtained during the marriage was her separate property. Notably, the disclosures listed an Apache horse trailer, the Ford F250, and the Toyota Tacoma as Marcie's separate property. Marcie identified these items as gifts or inherited from her family. The disclosures also claimed saddles and other horse tack were Marcie's separate property, because they were acquired before marriage. The document does not provide estimated values for these items. In contrast, on the unsigned disclosure document Gary allegedly provided, he had not characterized the trailer, Ford, and Toyota as separate property, and he assigned them a combined value of $35,735. He assigned the saddles, tacks, and a horse a combined value of $5,000 and claimed all were acquired during the marriage.

In his supplemental declaration to support the set-aside motion, Allen also took issue with the fact that the Propertizer—which he characterized as "Ms. Eston's Propertizer"—allocated $139,301 of community property to Gary to account for child support payments made to support a child from another relationship, "without any information whether he had adequate separate property to pay it." Allen also raised concerns about over $40,000 in community tax refunds that the Propertizer allocated to Gary.

According to hearing minutes for the March 10, 2025, hearing on the 664.6 motion and set-aside motion, Gary, Allen, and Eston were present. Marcie was not. The trial court advised that it had, "read and considered all motions and filings and [was] ready to proceed." Both counsel were heard and "[d]iscussion[s] ensue[d]" about the motions. The trial court granted the 664.6 motion. The trial court found, "both parties were represented by counsel at the time of the settlement." The trial court advanced the hearing on the set-aside motion and denied it.

8

On March 24, 2025, the trial court entered a judgment dissolving the marriage and ordering property division, attorney fees, and spousal support according to an attached settlement agreement.  The attached settlement agreement is the one prepared by Foyil in October 2024 with the changes made that Marcie's counsel had denoted in hand on an exhibit to the 664.6 motion.

Gary filed a notice of appeal on May 21, 2025.  Gary has elected to proceed without a record of the oral proceedings.

DISCUSSION

*Standards and Rules Governing Appellate Review*

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (9 Witkin, [Cal. Procedure (5th ed. 2008) Appeal], § 355, at p. 409; see Cal. Const., art. VI, § 13.)  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127 [].)  ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [].)  'Consequently, [the appellant] has the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' (*Hernandez v.*

9

*California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [].)" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [], fn. omitted.)

As part of this burden, an appellant must " 'provide a reporter's transcript if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court …" (Cal. Rules of Court, rule 8.120(b)), and it is the appellant who in the first instance may elect to proceed without a reporter's transcript (Cal. Rules of Court, rule 8.130(a)(4)) … .' (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5 [].) A reporter's transcript may not be necessary if the appeal involves legal issues requiring de novo review. [Citation.] In many cases involving the substantial evidence or abuse of discretion standard of review, however, a reporter's transcript or an agreed or settled statement of the proceedings will be indispensible [*sic*]. (See, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [] [declining to review the adequacy of an award of damages absent a transcript or settled statement of the damages portion of a jury trial]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 [] ['The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion'].)" (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.)

In appellate proceedings, every brief must, "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).)

"Appropriate headings require litigants to ' "present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." [Citation.]' [Citation.]" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) Thus, " '[f]ailure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179

10

[].)" (*Johnson v. Department of Transportation* (2025) 109 Cal.App.5th 917, 948; see also *Dameron Hospital Assn. v. Progressive Casualty Ins. Co.* (2025) 111 Cal.App.5th 530, 541.) Accordingly, we will not consider arguments Gary has made here that have not been identified under proper headings.

*The Appeal Fails on this Record*

A. 664.6 Motion

Under California Code of Civil Procedure, section 664.6, subdivision (a), "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

"[I]n ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined; (2) the supervising judicial officer questioned the parties regarding their understanding of those terms; and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms. In making the foregoing determination, the trial court may consider declarations of the parties and their counsel, *any transcript of the stipulation orally presented and recorded by a certified reporter*, and *any additional oral testimony*. … The standard governing review of such determinations by a trial court is whether the court's ruling is supported by substantial evidence." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911, italics added (*Assemi*); see also *Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 470 ["This standard of review usually applies to a determination of whether an oral contract exists"].)

11

Here, because we do not have a transcript of the August 7, 2024, hearing memorializing the parties' settlement agreement or the hearing on the parties' cross motions, we do not know the full extent of the evidence the trial court considered when it granted the 664.6 motion.  The minutes from the August 7, 2024, hearing regarding settlement—which was before the same commissioner as the hearing on the cross-motions—suggest there may have been substantial evidence to support the trial court findings that all three factors favored granting the 664.6 motion:  (1) Eston provided, "an update and addresse[d] full settlement agreement," and the trial court "heard the terms of the full settlement agreement."  (2) The trial court "inquire[d] of the parties."  (3) "all parties [were] in agreement."  (See *Assemi*, *supra*, 7 Cal.4th at p. 911.)  Without a record of the oral proceedings, we cannot ascertain if something was said on the record that would rebut a presumption that substantial evidence supported factual findings that (1) the parties orally reached a settlement agreement; and (2) the draft prepared by Gary's attorney accurately captured and did not materially add to the full agreement.

### B.  Set-Aside Motion

Under Family Code sections 2121 and 2122, a trial court may "relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property" under six specified grounds.  Included in those grounds are, "mistake, either mutual or unilateral, whether mistake of law or mistake of fact" and "[f]ailure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100)."  (Fam. Code, §§ 2121, subd. (a) & 2122, subds. (e)-(f).)

The disclosures contemplated by Chapter 9 of the Family Code include section 2104 preliminary disclosures and section 2105 final disclosures.  Under Family Code section 2104, subdivision (c), the "preliminary declaration of disclosure shall set forth with sufficient particularity, that a person of reasonable and ordinary intelligence can ascertain … :  [¶]  (1) The identity of all assets in which the declarant has or may have an

interest and all liabilities for which the declarant is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community, or separate. [¶] (2) The declarant's percentage of ownership in each asset and percentage of obligation for each liability when property is not solely owned by one or both of the parties. The preliminary declaration may also set forth the declarant's characterization of each asset or liability." Under Family Code section 2105, subdivision (b), the "final declaration of disclosure shall include … : [¶] (1) All material facts and information regarding the characterization of all assets and liabilities. [¶] (2) All material facts and information regarding the valuation of all assets that are contended to be community property or in which it is contended the community has an interest. [¶] (3) All material facts and information regarding the amounts of all obligations that are contended to be community obligations or for which it is contended the community has liability…."

Before granting relief on a motion to set-aside a judgment, the court must "find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (Fam. Code, § 2121, subd. (b).) "[A] judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate." (Fam. Code, § 2123.)

"The party moving for relief under [Family Code] section 2122 bears the burden of proving entitlement to relief. … We review the family court's ruling under section 2122 for abuse of discretion, which generally requires applying the substantial evidence standard to the family court's factual findings." (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566.)

Though Gary fails to unambiguously state the statutory basis upon which he anchored the set-aside motion below and this appeal, they appear to be based on Family Code section 2122. Given the absence of a record of the oral proceedings, we cannot

13

determine whether the trial court abused its discretion, and we must affirm the trial court's decision to deny the set-aside motion. (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79 ["Although in certain instances a reporter's transcript may not be necessary, including if an appeal involves a legal issue requiring de novo review …, on issues such as the instant one involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable"].)

### C. Gary's Arguments Do Not Cure the Insufficient Record

Gary's efforts to convince this court to reverse the trial court's rulings are not persuasive. Indeed, some of them demonstrate why the lack of a record of oral proceedings is fatal to his appeal. These arguments fall into four categories.

First, relying primarily on *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793 (*Weddington*), Gary argues that the court exceeded its authority under Code of Civil Procedure section 664.6 by attaching a settlement agreement Gary never signed to the judgment.

In *Weddington* the parties to the action stipulated to a voluntary mediation. (*Weddington*, 60 Cal.App.4th at p. 796.) The mediation yielded a one-page memorandum covering many material terms, but it also provided that "the parties would 'formalize' additional material terms later." (*Ibid.*) When the parties tried to formalize the additional terms, "disputes became apparent." (*Ibid.*) The plaintiff then filed a Code of Civil Procedure section 664.6 motion with the mediator. (*Ibid.*) The parties commenced additional sessions with the mediator, most of which "were recorded by a court reporter" and transcripts were placed in the record. (*Ibid.*) Those transcripts, "clearly show[ed] lack of agreement on many material terms." (*Ibid.*) The defendant eventually declined to participate in additional mediation sessions, but the plaintiff and mediator continued the process without the defendant. (*Ibid.*) The mediator then signed a 33-page order enforcing the purported settlement agreement. (*Id.* at pp. 796-797.)

14

According to the court of appeal, the " 'order' purported to impose upon appellants numerous *material* settlement terms to which appellants had never agreed." (*Id.* at p. 797, italics added.)

The plaintiff filed a motion in the superior court to enforce the order as a settlement agreement, which the superior court granted. (*Weddington*, *supra*, 60 Cal.App.4th at p. 797.) "By this method, a one-page memorandum which appellants signed after the initial mediation session became a thirty-five page judgment containing numerous material terms to which appellant had never agreed." (*Ibid.*)

In *Weddington*, the court of appeal reversed the judgment the trial court entered under Code of Civil Procedure section 664.6. (*Weddington*, *supra*, 60 Cal.App.4th at p. 819.) As part of its reasoning, the court held that "[a]lthough a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment …, nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Id.* at p. 810.)

Gary likens the 7 total pages of notes and Propertizer that became a 27-page settlement agreement (with 7 pages of attachments) here to the 1-page agreement that become a 35-page judgment in *Weddington*. Without providing examples of material terms Gary maintains were contained in the written settlement agreement drafted by his attorney but not in the agreement made on the record at the August 2024 hearing, Gary suggests the difference between the length of the documents here should be reason enough to find "a pure legal error" because it must be so that the final judgment contains material terms to which he did not agree. This reasoning ignores significant differences between the facts and record here and the facts and record in *Weddington*.

In *Weddington*, the court noted that while a settlement agreement "entered into orally before a court" might be enforceable under Code of Civil Procedure section 664.6, that was a "possibility not involved" in that case. (*Weddington*, *supra*, 60 Cal.App.4th at

15

p. 810.) Additionally, to the extent the parties had engaged in oral negotiations before the mediator, many of the sessions to discuss terms were part of the record and showed a lack of agreement on material terms. (*Id.* at p. 796.) In contrast, the record supports a finding that the parties *orally* entered their settlement agreement before the court in August 2024. The record before us does not show that the trial court could not have found all the material terms in the proposed written agreement were agreed to orally before the court. Indeed, given the same commissioner presided over both hearings the trial court was in a far superior position than this court to make that determination.

Also, in *Weddington* the final order was more than 30 times longer than the written document from the first round of mediation. (*Weddington*, *supra*, 60 Cal.App.4th at pp. 796-797.) Here the combined 7 pages of handwritten notes and Propertizer were used to prepare a 27-page agreement. That is roughly 4 times as long as the notes, leaving ample room for the inclusion of non-material standard language that is not in the notes and/or terms that might have been stated orally but not captured in Eston's notes. On this record, Gary has not shown there are material terms embodied in the written settlement agreement that he did not agree to orally before the court at the August 2024 hearing.

Second, Gary relies on various statutes contained in Civil Code section 1550, et seq., which govern contract formation, and he argues lack of sufficient disclosures in this case vitiated any consent he might have given to the settlement agreement. He suggests that, as a result, this judgment must be set aside. Without knowing what was said at either the hearing on the settlement or the hearing on the motions, we cannot determine whether sufficient evidence would support a finding that the parties were operating under a mistake when they consented to the terms of the settlement. (See *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 772 [holding that whether there was mutual assent to form a contract is a question of fact, and

16

that courts of appeal "must uphold the trial court's finding if supported by substantial evidence"].)

Third, Gary points to provisions of the judgment that he asserts were "tainted" due to an inadequate exchange of information between the parties. To support this, he points to various items listed on the Propertizer and suggests the Propertizer ascribed values to assets and debts that were unsupported. But, it is undisputed that the settlement agreement did not order Gary to make an equalizing payment to Marcie of approximately $112,500 (half of $225,000), which is approximately what he would have owed her had the parties fully adopted the Propertizer and the values it ascribed to the listed assets and debts.

Without a record of what was said at the hearing on the settlement or the hearing on the motions, we cannot say the factual record only supports a finding that the settlement terms were tainted by Marcie's failure to provide sufficient disclosures—or that she even was in the best position to provide documents supporting her characterization of and valuing assets. For example, Gary takes issue with (1) community tax refunds totaling $46,565 allocated to him on the Propertizer; and (2) child support payments made for a child from his prior relationship that were credited to the community totaling $139,301 on the Propertizer. With respect to the tax credits, he argues, "Marcie's [a]ttorney . . . should have provided the information to show where she obtained that information so that its accuracy could have been tested." Regarding child support payment, he argues "[t]here [was] no factual basis" to support this figure in the record, and Marcie "would have to show he had separate property available" at the time the child support payments were made.

As a preliminary matter, on this record, we do not know what final figures the parties reached in calculating community tax credits and child support payments. While the notes from the settlement hearing do suggest property will be divided, "per [the] [P]ropertizer," the notes do not say that the subject property will be *valued* according to

17

the Propertizer. The equalization payment the parties agreed to suggests the parties did, in fact, adjust some numbers during settlement negotiations. Also, from what we can see from the record before us, the trial court tasked Gary and his attorney with obtaining tax records and bank statements. Perhaps these records would have offered some insight regarding tax refunds collected by Gary or the community, and what funds were available or used to make child support payments. We cannot accept the suggestion that Gary was at a disadvantage and/or that the settlement agreement was tainted because Marcie did not provide the information her counsel used to make the estimates going into settlement negotiations.

Likewise, Gary's reliance on *In re Marriage of Sherman* (2005) 133 Cal.App.4th 795 to support his position Marcie had the burden to prove Gary had separate property available with which to make child support payments in order to award the community Family Code section 915 credit for payments the community made fails. *Sherman* concerned a dispute regarding a *trial court's finding* as to whether a community estate was entitled to reimbursement under Family Code section 915. (*Sherman*, *supra*, 133 Cal.App.4th at p. 798.) Here, the valuation Gary takes issue with was one made by counsel, in preparation for settlement negotiations, which resulted in a settlement agreement. It does not reflect the parties adopted all those valuations. This was not a trial with its attendant burdens of proof.

A lack of a complete records also defeats Gary's position that the settlement is tainted because (1) Marcie did not provide sufficient records to support settlement provisions that deemed some items her separate property (vehicles and horse riding and care accessories); and (2) it does not give him credit under *In re Marriage of Epstein* (1979) 24 Cal.3d 76 for post-separation payments he made. On this record, we cannot say the trial court lacked sufficient evidence to find the facts it needed to find when ruling on the 664.6 motion or that it abused its discretion in denying the set-aside motion. Once again, we do not know what was said before the court regarding information considered

18

during the settlement and whether the omission of certain information had any impact on material settlement terms.

DISPOSITION

The judgment is affirmed. Under California Rules of Court, rule 8.278(a), Marcie is awarded her costs on appeal.

/s/ _____
HULL, Acting P. J.

We concur:

/s/ _____
ROBIE, J.

/s/ _____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.